PETTITT v. The KALLISTO. See Case No. 7,600.

## Case No. 11,048.

PETTUS et al. v. GEORGIA RAILROAD & BANKING CO. et al.

[3 Woods, 620.] [1]

Circuit Court, M. D. Alabama. May Term, 1879.

REMOVAL OF CAUSES—SUIT FOR COUNSEL FEES IN PENDING LITIGATION.

A bill was filed in a state chancery court, by certain complainants, in behalf of themselves and other creditors, to assert and enforce a lien on certain railroad property which had been sold and was in the possession of the purchasers. After final decree by which the lien was established, and while a reference to the master was pending to ascertain the amounts due the cred-

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

itors who sought the benefit of the decree, the purchasers of the railroad property against which the lien had been declared, paid the complainants their claims in full, and bought up and settled other claims entitled to the benefit of the decree. Counsel for complainants received no compensation for their services, in respect to these last-mentioned claims. They, therefore, filed their petition in the state chancery court, entitled of the original cause, against the purchasers of the railroad property, in which they claimed a lien on said property for their fees in the original case, and prayed that the defendants to the petition might be served with notice thereof, and allowed to answer the same; that an account might be taken of what was due the petitioners for their said services; that the defendants might be decreed to pay them for said services such sums as were just and equitable; that they might be declared to have a lien on said railroad property therefor; and if said sums were not paid, that the property might be sold to pay the same, and for general relief. *Held*, that this petition was not a mere graft upon or appendage to the original suit, but was, to all intents, a suit in equity; and as the case fulfilled all other requirements of the statute, it could be removed from the state to the federal court, by virtue of the act of March 3, 1875 [18 Stat. 470] for the removal of causes.

Heard upon motion to dismiss the suit, on the ground that it had been improperly removed from the state court.

The facts were as follows:

Branch Sons & Co., and other complainants, filed their bill in equity in the chancery court for Montgomery county, Alabama, on May 8, 1875, against the Montgomery & West Point Railroad Company of Alabama, and the Georgia Railroad & Banking Company and the Central Railroad & Banking Company of Georgia, the two latter being corporations and citizens of the state of Georgia, and against other defendants. The bill was filed, not only for the complainants named therein, but for the benefit of all others who might be creditors of the said Montgomery & West Point Railroad Company, not secured by mortgage, who should come in and share the expenses of the suit. The bill was a general creditors' bill, and its purpose was to establish, by the decree of the court, a lien upon the Montgomery & West Point Railroad and its equipments, and upon all real and personal property used by or appurtenant to said railroad, prior to September, 1870, in favor of all the unsecured creditors of said Montgomery & West Point Railroad Company, in proportion to the amount of their claims. The property sought to be subjected to said claims was of the value of $1,200,000, and was within the jurisdiction of the said court. On May 3, 1877, the chancery court rendered a final decree condemning all of said property to the payment of the claims of said Montgomery & West Point Railroad Company, and directed an account to be taken of the amounts due and owing to the complainants in the bill, and other creditors of said railroad company. The register of the court gave notice to the creditors, requiring them to file their claims, and soon thereafter debts, consisting mainly of bonds and coupons, and in other forms, were filed in said court, to the amount of $300,000. Before the time for presenting claims had expired, an appeal was taken from the decree to the supreme court of the state of Alabama, by which the decree was superseded. On May 20, 1878, the decree was affirmed by the supreme court, and by an order of said chancery court, dated June 1, 1878, the register was directed to proceed with the reference ordered by the final decree. The register again gave notice to the creditors of the Montgomery & West Point Railroad, to file their claims, and a large number of the creditors did come in and file their claims and seek the benefit of said final decree, and the claims thus filed amounted to $250,000, in addition to those filed before the appeal. All these claims were just debts and liabilities of the Montgomery & West Point Railroad Company, all of them accrued before the filing of the bill, and were not secured by any mortgage, and were included in the debts of said company, mentioned in the bill of complaint; and every claimant had a lien for the debt due him on all the property of said company, held by it prior to the year 1870, and condemned by said decree to the payment of said debts.

On June 1, 1875, the Georgia Railroad & Banking Company, and the Central Railroad & Banking Company of Georgia, had possession of the railroad and other property which belonged to the Montgomery & West Point Railroad Company at the time of its dissolution in 1870, and continued to possess the same and claim it as their property, but the creditors of said last named company claimed that the said Georgia corporations held the same as trustees for them. About November, 1878, the register of the chancery court began to execute the reference ordered by said final decree, and to take an account of the debts due from the Montgomery & West Point Railroad Company to persons who had filed their claims, and pending said reference, the said Georgia corporations paid the complainants named in the bill the claims in full, principal and interest, which they held against the Montgomery & West Point Railroad Company, and said complainants agreed to keep said payment secret from their counsel in said cause, until said Georgia railroad corporations could have time to settle or buy up all other claims against the Montgomery & West Point Railroad Company which had been filed in said cause, and said Georgia corporations, under this arrangement, went forward and acquired possession and control of all said claims which had been filed as aforesaid. The said Georgia corporations, before they bought up or settled any of said claims, had active notice that the counsel for complainants claimed a lien on all the claims filed in said cause, and were entitled to be paid for their services as counsel, out of the property which had formerly belonged to the Montgomery & West Point Railroad Company.

and which was held by said two Georgia corporations, and said latter companies, before buying and settling said claims, had entered into negotiations with the counsel of complainants to fix the amount of the compensation to which they were entitled for their services as such counsel. The said Georgia corporations paid for all of said claims, except those of the complainants named in the bill, far less than their nominal value. Other creditors of the Montgomery & West Point Railroad Company, who held claims to the amount of $40,000, but who never filed their claims, after said decree had been affirmed by the supreme court, accepted and obtained the benefit of the services of complainants' counsel by demanding and receiving from said Georgia corporations a large part of their respective claims, in settlement and payment, with the condition imposed that they should not file said claims. The counsel for complainants in said cause received compensation for their services, as such, rendered the original complainants and a few other creditors, but received no compensation for their said services from any other of said creditors. The said Georgia corporations, before they paid off or settled any of said claims, had notice of the services rendered by said counsel for said creditors, and of the lien claimed therefor by the counsel of complainants. The said Georgia railroad companies having obtained possession and control of all the claims filed, and claims not filed, as above stated, asserted their right to hold and own the same, without paying to the counsel of the complainants any compensation for their services in reference to said claims.

On this state of facts Messrs. Pettus & Dawson and Messrs. Watts & Sons, who were the counsel for the complainants in said suit, filed, on April 15, 1878, their petition entitled of said suit, and addressed to the chancellor of said chancery court, in which they set out, in detail, the facts heretofore stated, and claimed that they, by reason of said facts, became the owners in equity as assignees of a part of each one of said claims, on account of which they had not been paid for their services. They further alleged that, after deducting all the compensation they had received for their said services, there was justly due to them large sums on account of their services in said suit, to creditors who came in and received the benefit of such services without making any compensation therefor; that at the time said bill was filed, the said claims against the Montgomery & West Point Railroad Company, not secured by mortgage, were not worth exceeding ten cents on the dollar, and were considered by the holders thereof to be of little value; but by the services of said counsel, said claims after the affirmance of said decree, became of par value. They claimed, further, that their said services were worth twelve to fifteen per cent of the full value of said claims. The petition repeatedly referred to the record of said equity cause, on file in the said chancery court. It prayed that the said Georgia Railroad & Banking Company, and the said Central Railroad & Banking Company of Georgia, might be made parties defendant to the said petition, and have notice thereof, and be allowed to answer the same, and that they might be required to produce before the register of the court all the claims against the Montgomery & West Point Railroad Company, which they had bought or settled, that an account might be taken of the amounts justly and equitably due to the petitioners for the services rendered by them as solicitors in said cause, for the benefit of the creditors of the Montgomery & West Point Railroad Company, who accepted and received benefit from said services, that, if necessary, an account might be taken of the debts owing by the said Montgomery & West Point Railroad Company at the date of said final decree, and petitioners be declared to be entitled to such parts of each of said claims (except those claims in reference to which their services had been compensated), as might be just and equitable; that said Georgia corporations might be required to pay to the petitioners such sums as might be found reasonably due them for services rendered in said cause, which had not been paid for, and that petitioners might be declared to have a lien on all the property mentioned in the bill of complaint, which formerly belonged to the said Montgomery & West Point Railroad Company, and was then in the possession of the said Georgia corporations, for the amounts found due to petitioners, and that if said sums were not paid, that said property might be sold, under the decree of the court, to pay the same, and for general relief. This petition was sworn to by one of the petitioners, and an affidavit averring the non-residence of the parties defendant having been filed, the chancery court ordered that they be brought into court by publication, and directed that defendants plead answer or demur thereto within thirty days after service.

The defendants to this petition, on April 24, 1879, filed their petition, accompanied by a bond executed according to law, in which they prayed for the removal of the cause instituted by the petition to this court. The prayer of this petition was denied, on the sole ground that the suit was not one which could be removed, under the acts of congress.

Thereupon the defendants to the petition filed a transcript of the petition and the proceedings thereon, and the same was docketed in this court as the suit of Pettus & Dawson and Watts & Sons v. The Georgia Railroad & Banking Company, and the Central Railroad & Banking Company of Georgia.

The petitioners thereupon moved to dismiss the cause out of this court, and on this motion the case was heard.

Thomas H. Watts, Walter L. Bragg, and Wm. S. Thorington, for the motion.

Henry C. Semple, contra.

WOODS, Circuit Judge. The removal attempted in this case is claimed to be by virtue of the act of March 3, 1875. It is conceded that the petition and bond for removal were sufficient in form and substance, that they were filed within the time limited by the statute, and that the transcript of the record of the state court was filed in this court "on or before the first day of its then next session," as required by law. The ground, and the only ground of the motion to dismiss is, that this is not such a suit as can, under the act of congress, be removed to this court. The second section of the act of March 3, 1875 (18 Stat. 470), declares "that any suit of a civil nature at law or in equity, now pending or hereafter brought in any state court, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, * * * and in which there shall be a controversy between citizens of different states, * * * either party may remove said suit into the circuit court of the United States for the proper district, and where, in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants actually interested in such controversy, may remove said suit to the circuit court of the United States for the proper district." The matter in dispute, in this petition, largely exceeds the sum of five hundred dollars, exclusive of costs, the petitioners are all citizens of Alabama, and the defendants to the petition are all citizens of Georgia; it is therefore, a controversy between citizens of different states; the petitioners and the defendants are alone interested in the controversy, therefore it can be fully determined as between them. It is clear, therefore, that the controversy set out in the petition is one proper for removal, if the matter removed is "a suit of a civil nature at law or in equity." The counsel for the petitioners assert that it is not a suit, but a mere incidental proceeding, an appendage to, or graft upon, a suit still pending in the state chancery court.

In support of this view they cite the following cases: West v. Aurora City, 6 Wall. [73 U. S.] 139; Bank v. Turnbull, 16 Wall. [83 U. S.] 190; and Webber v. Humphreys [Case No. 17,326].

The case of West v. Aurora City [supra] arose on an attempted removal of the case from the state to the federal court, under the twelfth section of the judiciary act, which restricts the right to remove to the defendant. Under the Code of the state of Indiana, where the suit was pending, the defendant was allowed, with his defense, to set forth counter-claims, or set-offs. In this case the suit appeared to be upon interest coupons on bonds issued by the defendant. The defendant having made defense by answer under the Code, filed by leave of the court, three paragraphs, setting up new defensive matter, and prayed an injunction against the plaintiffs, to restrain them from proceeding in any suit on the coupons or bonds, etc., and for a decree that the bonds be delivered up. Thereupon the plaintiff discontinued his suit, and assuming that the new paragraphs of the answer would remain in substance a new suit against him, filed his petition for the removal of the cause to the federal court, and it was removed accordingly, but was afterwards remanded by the federal to the state court.

In passing upon the propriety of this action of the circuit court, the supreme court said that the circuit court was clearly right in its action. The right of removal is given only to a defendant who has not submitted himself to the jurisdiction; not to an original plaintiff in a state court, who, by resorting to that jurisdiction, has become liable, under the state laws, to a cross-action. And it is given only to a defendant who promptly avails himself of the right at the time of appearance, by declining to plead, and filing his petition for removal. It is evident that this cause, decided under the twelfth section of the judiciary act, is not an authority applicable to the matter in hand.

In the case of Bank v. Turnbull, supra, there was an execution issued upon a judgment recovered by the bank against one Thomas, which was levied on property claimed by Turnbull, who were allowed to intervene and set up their ownership, and a jury was ordered to be called to decide whether the property levied on belonged to Turnbull or Thomas. This issue was removed to the United States circuit court, and, after final judgment, to the supreme court, and the question was presented to the supreme court, whether it was a suit properly removable, under the act of March 2, 1867 (14 Stat. 558), for the removal of causes. The supreme court held that the matter removed "was merely auxiliary to the original action, a graft upon it, and not an independent and separate litigation. * * * The contest could not have arisen but for the judgment and execution, and satisfaction of the former would at once have extinguished the controversy between the parties."

In the case of Webber v. Humphreys, supra, a Missouri statute provided that if no property of a corporation could be found to satisfy an execution issued against it, then such execution might be issued against any of the stockholders to the amount unpaid on their stock, provided that execution should not issue against a stockholder except by order of the court, made upon due notice to him. Such a motion was made in that case, and the court held that it was not a suit which could be removed from the state to the federal court.

The case of Bank v. Turnbull [supra] and the case just referred to, were clearly not independent suits. They could not be severed from the case to which they belonged. In both cases they were merely proceedings to regulate and control the processes of the court in the case to which the proceedings appertained.

The question then recurs, is the petition in this case a suit? In my judgment, it has all the necessary elements of a bill in equity, and is a bill in equity. If the purpose of the petition in this case were to obtain an order of the court that the petitioners' fees for services might be paid out of the property of their clients, which their services had secured and brought into court, or which the court had in its possession, there might be some ground for the idea that this was a graft on the main suit. But that is not the object of the petition. The petitioners are asserting a claim for their fees, not against their own clients, but, in effect, against the property of the opposite party. The clients of the petitioners were primarily liable for the petitioners' fees. Their claims have been satisfied, but they have failed to pay the fees due the petitioners. The attempt is, in effect, to subject the property of the opposite party to the payment of the fees of petitioners. This surely is not a graft on the main case. The petitioners assert a lien on the property of defendants. They declare that defendants are trustees for them, and they charge fraud practiced by defendants to their damage and injury. They seek to enforce the lien and trust. They pray for an account of the amount due to them by reason of the trust. Seek to enforce the lien by a sale of the property on which it rests, and they pray that defendants may answer, and for general relief, and that notice may be served on the defendants. An order to bring defendants in by publication was actually taken.

Here are all the essential elements of a bill in equity. See Stickney v. Wilt, 23 Wall. [90 U. S.] 150, where a proceeding, not as much like a suit in equity as this, was declared to be such. This case might have been brought as an independent suit, either in the state chancery court or in this court. The full settlement and adjustment of the original claim would not settle or adjust the controversy between these parties. This suit had its origin in the original case, but is not a part of it, or dependent on it. The case falls within the rule laid down in West v. Aurora City, supra: "It is a suit regularly commenced by a citizen of the state in which the suit is brought, by process served on a defendant who is a citizen of another state." This court, if it should proceed to a decree in favor of the petitioners, and establish their lien on the property of defendants, would not necessarily interfere with the property in the possession of the state court. If this court establishes the claim and lien of the petitioners, that lien can be enforced as soon as the hand of the state court is taken from the property; or, the petitioners, having established their lien in this court, could propound their claim in the state court, if that court were proceeding with the administration of the property.

We are satisfied that this is a new cause, entirely independent of the original case, that could be commenced and prosecuted after the original case had been entirely disposed of and ended. That it is a suit in equity between new parties on a new cause of action, and as it fills all other requirements of the statute, it is a cause proper to be removed to this court. The motion to dismiss must therefore be overruled

[NOTE. Upon the hearing of this case upon its merits, a decree in favor of plaintiffs was entered for $35,161.21. Case unreported. This was reduced by the supreme court, upon appeal, to $17,580. 113 U. S. 116, 5 Sup. Ct. 387.]